## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

**UNITED STATES OF AMERICA**                                            **PLAINTIFF**

v.                                                                   NO. 3:18CR-85-DJH
                                                                                                      *Electronically Filed*

**BINGSTON CROSBY**                                                          **DEFENDANT**

### UNITED STATES' SENTENCING MEMORANDUM

      The United States of America, by counsel, respectfully submits this Sentencing Memorandum in support of its recommendation to the Court regarding the sentence of the defendant.

### I. FACTUAL BACKGROUND

      The defendant, Bingston Crosby (hereinafter "Crosby"), paid defendant Lacy Black to recruit patients, including Kentucky Medicaid (Passport Health Plan, a Managed Care Organization) patients, to treat at Crosby Chiropractic Center, Inc., (hereinafter Crosby Chiropractic) which is owned by Crosby. Black recruited patients by promising to pay the patients to treat at Crosby Chiropractic. Crosby paid Black knowing that Black promised to pay kickbacks to entice patients to treat at Crosby Chiropractic. Black drove the patients to and from Crosby for treatment. Crosby also billed health care benefit programs for medically unnecessary services. In addition, treatment plans were not tailored to the patients' needs but rather were cookie-cutter treatment plans where most patients received the same treatment whether they needed it or not. Specifically, Crosby billed health care benefit programs for medical services, which were unnecessary to patients L.B., K.F., R.P., A.J., N.G., R.W., and A.B.

In addition, in order to conceal and disguise the true nature of the proceeds, Crosby commingled illegally derived health care fraud proceeds from the Passport Health Plan and instead of depositing the proceeds into his business checking account, Crosby remitted the checks to Eastern Savings Bank to pay his mortgage.

Additionally, Crosby paid and offered to pay, through Lacy Black, Passport Health Plan patients to treat at his chiropractic clinic and billed for services never rendered, and was reimbursed by Passport Health Plan for those services.   In the course of and for the purpose of executing the scheme, Crosby caused Passport Health Plan to mail approximately seven checks via the United States Postal Service, which constituted mail fraud.

## II. SENTENCING ISSUES

The United States recommends a low-end guideline sentence of 18 months imprisonment. The United States agrees with Probation's guideline calculation that the total offense level is 15 (18-24 months).   Crosby argues the following departures:

**A.     U.S.S.G. §5H1.1**

Crosby requests a downward departure based on his age.   Crosby is 77 years old.   5H1.1 states, in part,

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration…

Departures are reserved for unusual cases, those outside the "heartland" carved by the remainder of the Guidelines. See Ch. 1, Pt. A, comment. 4(b)-Departures. They are "intended to be quite rare." *United States v. Justice*, 877 F.2d 664, 666 (8th Cir.). There must be extraordinary circumstances to depart downward based on age. *United States v. Higgins*, 967 F2d. 841, 845 (3rd Cir. 1992).

In this case, Crosby is a healthy 77-year-old man who is only facing 18 months of incarceration. Additionally, it is highly likely that Crosby will spend 6 months of his 18-month sentence in a Residential Reentry Center in Louisville. Furthermore, Crosby does not claim any substantial health problems. Crosby does not fit the criteria of "elderly and infirm" to be eligible for home confinement.

**B.     U.S.S.G. §5H1.6**

Crosby requests home confinement in order to take care of his wife who allegedly has dementia. Family responsibilities are not ordinarily relevant in determining whether a departure may be warranted. *See* U.S.S.G. §5H1.6. §5H1.6 Application note states the following:

> (A) In General.--In determining whether a departure is warranted under this policy statement the court shall consider the following non-exhaustive list of circumstances:
> (i) The seriousness of the offense.
> (ii) The involvement in the offense, if any, of members of the defendant's family.
> (iii) The danger, if any, to members of the defendant's family as a result of the offense.
>
> (B) Departures Based on Loss of Caretaking or Financial Support.--A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
> (i) The defendant's service of a sentence within the applicable guideline range will cause a

>substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>(ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>(iv) The departure effectively will address the loss of caretaking or financial support.

It is the defendant's burden to substantiate the need for a downward departure. *United States v. Archuleta*, 128 F.3d 1446, 1449 (10th Cir. 1997). Only "[e]xtraordinary family circumstances" may justify a downward departure. *United States v. Vidrickson*, 998 F.2d 601, 603 (8th Cir.1993). The Tenth Circuit reversed the trial court where the trial court departed based on the defendant's caretaking responsibilities. *Id*. The trial court relied on the fact that the defendant was the sole caretaker of her two-month-old child, a 16-year-old daughter and she cared for her diabetic mother. *Id*. In reversing, the *Archuleta* Court noted, "the Guidelines are clear that in this most difficult and justifiably sympathy-evoking area, courts should depart downward only in rare cases." *Id*. at 1452.

In *United States v. Rose*, Nos. 93-5764, 93-5165, 93-5166, 47 F.3d 1172 (6th Cir. Jan. 17, 1995), the Sixth Circuit agreed that defendant's wife's heart murmur and her inability to support herself did not warrant a downward departure under §5H1.6. In rejecting Rose's claim, the court pointed out that for "family responsibilities, the Commission's policy statement is stricter than for physical conditions" in that family responsibilities are not ordinarily relevant. *Id*. Family circumstances are disfavored under the Guidelines. *United States v. Williams*, No. 10-5028, 505 Fed. Appx. 426, 429 (6th Cir. Nov. 13, 2012).

In *United States v. Geralt*, 2017 WL 945487 *6, (6th Cir. March 10, 2017), the trial court departed downward based on the doctor defendant's advanced age. "The district court, emphasizing Geralt's advanced age (87 at the time he was sentenced) and serious health problems, imposed a below-guidelines sentence of 180 months' imprisonment." *Id*. Although the departure was not specifically based on 5H1.6, the court noted the defendant's advanced age and serious health problems when departing from 235 months to 180 months. *Id*.

U.S.S.G. §5C1.1 disallows home detention for a guideline range in Zone C or D. Home detention is eligible for guideline ranges A or B. The top offense level for zone B is 11 (8-14 months). Crosby does not fall within Zone A or B but rather zone D and is not eligible for home detention.

In the present case, Crosby has an adult child who appears to be successful, running her own horse-riding business. His daughter also lives next door to him and his wife. His daughter should be able to care for her mother. Crosby also reported substantial assets, near $600,000. Thus, Crosby has substantial assets to afford to pay for a home healthcare nurse or a nursing facility to help care for Ms. Crosby. Crosby is not the sole caretaker of his wife. Crosby has other options for caring for his wife instead of himself while he is away for approximately one year. Home detention would diminish the seriousness of the offense.

**C. FIRST STEP ACT**

Crosby references the First Step Act when arguing for home confinement. The First Step Act as it relates to home confinement is codified at 18 U.S.C. § 3624. Subsection c(2) states as follows:

> **Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of

5

>imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

The First Step Act merely allows the Bureau of Prisons to release a defendant to home confinement once either 10 percent of their sentence has been satisfied or 6 months before release, whichever is shorter. However, it does not mandate the entire sentence be served on home confinement.

## 18 U.S.C. § 3553(a) FACTORS

1.  <u>The nature and circumstances of the offense and the history and characteristics of the defendant.</u>

It is correct that Crosby lacks criminal history; however, Crosby's fraud scheme stretched over a span of two years. During that time, Crosby paid a patient recruiter to pray on impoverished Medicaid patients. Crosby paid the patient recruiter to find Medicaid patients and paid the patients to treat at his clinic. Crosby also billed for services that were not medically necessary. Finally, Crosby hid his fraud proceeds by avoiding depositing checks into his bank by taking the unique steps of endorsing the checks and paying his mortgage holder directly. Although the actual loss amount was only $44,686.31, Crosby submitted approximately $186,790 in fraudulent bills to the Kentucky Medicaid system. Medicaid did not reimburse Crosby for all of his invoices.

2   <u>The need for the sentence imposed</u>—

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Crosby plead guilty to health care fraud, mail fraud, money laundering and for paying health care kickbacks. But for the relatively short fraud time period, Crosby's crimes overall were significant. Had Crosby not been stopped, the loss amounts could have been substantial. Worse yet, Crosby stole from the already overburdened Medicaid system. Crosby took an oath that he would essentially help the sick and alleviate suffering. Crosby violated his oath by stealing from the very system that helps pay for the underprivileged.

Home detention does not promote respect for the law, provide just punishment for the offense, or deter future criminal conduct. The United States agrees that Crosby is not in need of educational, vocational or medical care that could be provided in prison. However, in order to ensure just punishment and to deter other chiropractors and medical professionals from stealing from the Medicaid program, a prison sentence is required. If Crosby is permitted to serve his sentence at home, there will be no deterrent effect for other doctors considering whether to engage in health care fraud.

3.      The kinds of sentences available.

Crosby's total offense level is 18, which is Zone D. Zone D makes Crosby ineligible for home confinement or probation. The only sentence available is imprisonment.

4.      The need to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct.

The easiest way to ensure there is no disparity among similarly situated defendants is to follow the United States Sentencing Guidelines. The guidelines call for an 18-month sentence in prison.

5.   The need to provide restitution to any victims of the offense.

Crosby will have to pay restitution in this case.   However, the restitution is relatively small.   Crosby has $600,000 in assets.   Crosby can easily pay his restitution upfront at sentencing before being incarcerated.

## CONCLUSION

Over the course of two years, Crosby paid a recruiter to pay Medicaid patients to treat at his clinic.   Crosby also billed for medically unnecessary services and laundered the money. Crosby is old but not "elderly and infirm".   Crosby also has substantial means to hire a nurse or have his adult child who lives next-door care for his wife while he serves his relatively short prison sentence.

For all the above stated reasons, the United States respectfully requests that Crosby be sentenced in accordance with the guidelines to 18-months of imprisonment and that he be required to pay restitution upfront at sentencing in the amount of $44,686.31.

Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney


 /s/ Joseph Ansari
Joseph R. Ansari
Lettricea Jefferson-Webb
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky 40202
502-582-5911

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was sent by electronic transmission through the Court's ECF system on February 24, 2019.


 /s/ Joseph Ansari
Joseph Ansari
Lettricea Jefferson-Webb
Assistant United States Attorneys